**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

------------------------------------ x

CAMILLO ECHAVARRIA, JONATHAN MARK : 
ADELS, JAMES LABRIE, MAYCOL GOMEZ, :
PLINIO ANGULO, JOSE CRUZ, HENRY :
RIVERA, JOSE SANTOS, REINALDO :
RODRIGUEZ, ANDRES CRUZ and CARLOS : Docket No. 15-6441
VARGAS, on behalf of themselves and : (AET)(TB)
all other similarly situated :
persons, : **Motion Date**: **February 1,**
                                    : **2016**
              Plaintiffs, :
                                    : *Document Filed*
        v. : *Electronically*
                                    :
WILLIAMS SONOMA, INC., J&J : Oral Argument Requested
TRUCKING, INC., MXD, INC. (f/k/a :
EXEL DIRECT, INC.), ABC CORP. AND :
JANE & JOHN DOES, :
                                    :
              Defendants. :

------------------------------------ x


**DEFENDANT WILLIAMS-SONOMA, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**



Dated: New York, New York
       November 20, 2015



Of Counsel:    Jonathan Stoler, Esq.
               Brian D. Murphy, Esq. (admitted *pro hac vice*)


               SHEPPARD MULLIN RICHTER & HAMPTON LLP
                      30 Rockefeller Plaza
                  New York, New York 10112-0015
                       Tel.: (212) 653-8700

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT...................................................1

STATEMENT OF MATERIAL AND UNDISPUTED FACTS......................3

ARGUMENT......................................................................3

I.    The Summary Judgment Standard.............................3

II.   The Court Should Dismiss Plaintiffs' Claims Against
      WSI Because WSI Did Not Employ Any Plaintiff..............5

      A.    It Is Undisputed That WSI Was Not Plaintiffs'
            "Employer"..........................................6

      B.    It Is Undisputed That WSI Was Not Plaintiffs'
            "Joint Employer"...................................13

CONCLUSION...................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Adami v. Cardo Windows, Inc.*
  No. 12-2804 (JBS)(JS), 2014 WL 2586933 (D.N.J. June 10,
  2014) ...................................................... 4

*Ahmad v. Daniyal Enter., LLC*
  No. 14-CIV-1142 (SDW)(SCM), 2015 WL 6872481 (D.N.J. Nov.
  9, 2015) ................................................. 3, 4

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ........................................ 4

*Artis v. Asberry*
  No. G-10-3232012, 2012 WL 5031196 (S.D. Tex. Oct. 16,
  2012) .................................................. 9, 14

*Black Care Assistance Corp. v. New Jersey*
  351 F. Supp. 2d 284 (D.N.J. 2004) .......................... 4

*Bonnette v. Cal. Health & Welfare Agency*
  704 F.2d 1465 (9th Cir. 1983) .......................... 14, 16

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986) ........................................ 4

*Chen v. Century Buffet & Rest.*
  No. 09-1687 (SRC), 2012 WL 113539 (D.N.J. Jan. 12, 2012) .... 6

*Chen v. Domino's Pizza, Inc.*
  No. 09-107 (JAP), 2009 WL 3379946 (D.N.J. Oct. 16, 2009)
  .................................................. 7, 8, 12

*Diaz v. U.S. Century Bank*
  No. 12-21224-CIV, 2013 WL 2046548 (S.D. Fla. May 14,
  2013) ..................................................... 22

*In re Enterprise Rent-A-Car Wage & Hour Employment Litig.*
  683 F.3d 462 (3d Cir. 2012) .................. 2, 13, 14, 22, 25

*Harris v. Scriptfleet, Inc.*
  No. 11-4561 (SRC), 2011 WL 6072020 (D.N.J. Dec. 6, 2011) .... 6

*Herman v. Mid-Atlantic Installation Servs., Inc.*
  164 F. Supp. 2d 667 (D. Md. 2000) .......................... 9

*Holmes v. FedEx Ground Package Sys., Inc.*
    No. 12-CV-00030-BSM, 2013 WL 11041743 (E.D. Ark. Jan. 25,
    2013) ..................................................10, 14, 20, 25

*Jackson v. Danberg*
    594 F.3d 210 (3d Cir. 2010) ...................................4

*Layton v. DHL Express (USA), Inc.*
    686 F.3d 1172 (11th Cir. 2012) ......................14, 23, 24

*Likes v. DHL Express (USA), Inc.*
    2012 WL 4899732 (N.D. Ala. Mar. 7, 2012) ...............20, 23

*Molina v. Hentech, LLC*
    No. 13-CV-111-ORL-22KRS, 2015 WL 1242790 (M.D. Fla. Mar.
    18, 2015) ..................................11, 14, 20, 21, 22

*Montoya v. 3PD, Inc.*
    No. CV-13-8068-PCT-SMM, 2014 WL 3385116 (D. Ariz.
    July 10, 2014) .......2, 10, 11, 12, 15, 16, 17, 18, 19, 24, 25

*Ortiz v. Paramo*
    No. 06-CV-3062, 2008 WL 4378373 (D.N.J. Sept. 19, 2008) ..6, 13

*Podobnik v. U.S. Postal Serv.*
    409 F.3d 584 (3d Cir. 2005) ...................................4

*Pukowsky v. Caruso*
    312 N.J. Super. 171 (App. Div. 1998) .........................7

*Rios v. Airborne Express Inc.*
    No. C-05-2092 VRW, 2006 WL 2067847 (N.D. Cal. July 26,
    2006) .......................................................20

*Ruiz v. S. Jersey Painting Co., Inc.*
    No. L-4456-11, 2013 WL 3762688 (N.J. App. Div. July 19,
    2013) .......................................................14

*Shakib v. Back Bay Rest. Grp., Inc.*
    No. 10-CV-4564, 2011 WL 4594654 (D.N.J. Sept. 30, 2011) ......6

*Tan v. Mr. Pi's Sushi, Inc.*
    No. 09-1579 (KSH), 2010 WL 5392754 (D.N.J. Dec. 21, 2010) ...14

*Thompson v. Real Estate Mortg. Network*
    748 F.3d 142 (3d Cir. 2014) ...............................6, 13

*Valdez v. Cox Commc'ns Las Vegas, Inc.*
  No. 09-CV-1797-PMP-RJJ, 2012 WL 1203726 (D. Nev. Apr. 11,
  2012) .................................................9, 11

*Yu v. McGrath*
  597 F. App'x 62 (3d Cir. 2014) ........................20, 21

*Zhao v. Bebe Stores, Inc.*
  247 F. Supp. 2d 1154 (C.D. Cal. 2003) ......................21

<u>Statutes</u>

N.J. STAT. ANN. § 12:56-2.1.1..................................6

N.J. STAT. ANN. § 34:11-56a1(g)................................6

<u>Other Authorities</u>

FED. R. CIV. P. 56 ........................................1, 3

Local Rule 56.1...............................................3

Pursuant to Federal Rule of Civil Procedure 56, Defendant Williams-Sonoma, Inc. ("WSI"), respectfully submits this Memorandum of Law in Support of Its Motion for Summary dismissing the claims of Plaintiffs Camillo Echavarria, Jonathan Mark Adels, James Labrie, Maycol Gomez, Plinio Angulo, Jose Cruz, Henry Rivera, Jose Santos, Reinaldo Rodriguez, Andrews Cruz, and Carlos Vargas (collectively, "Plaintiffs") alleged in the Third Amended Complaint ("TAC") in their entirety.

## **PRELIMINARY STATEMENT**

Plaintiffs cannot establish that they were employed by WSI under even the most lenient and liberal interpretation of the terms "employer" and/or "joint employer" under the New Jersey Wage and Hour Law ("NJWHL"). WSI contracted with MXD, Inc. ("MXD"), a third-party logistics vendor, to assume all responsibilities for the "final mile" of the delivery of WSI's products to WSI's customers. MXD selected Subcontractors, owners and operators of trucks, to perform the actual delivery of WSI merchandise without the input of WSI. These Subcontractors, in turn, hired their own Drivers and Helpers, determined those drivers' compensation, set their schedules, provided them with equipment, assigned them to specific trucks, designated them as Drivers or Helpers, determined who they would work with, assigned them their delivery routes, monitored their performance, and issued discipline when necessary, including

termination, without any input from WSI. Plaintiffs, former Drivers and/or Helpers, are not even the employees of WSI's subcontractor, MXD: they are the employees of MXD's subcontractors, thus rendering WSI twice removed from any involvement with the terms and conditions of their employment.[1] These facts are undisputed.

Plaintiffs nevertheless seek to involve WSI in this litigation under a "joint employer" theory, which generally contemplates the alleged employer exercising a sufficient degree of control over the terms and conditions of employment such that liability may rightly be imposed. In undertaking this analysis, the Court's decision here should be guided by the District of Arizona's decision in *Montoya v. 3PD, Inc.*, No. CV-13-8068-PCT-SMM, 2014 WL 3385116 (D. Ariz. July 10, 2014), which engaged in a nearly-identical "joint employer" inquiry as that reduced to law in this District by the Third Circuit in *In re Enterprise Rent-A-Car Wage & Hour Employment Litigation*, 683 F.3d 462 (3d Cir. 2012). The facts there – also concerning truckers hired by subcontractors of the subcontractor of the principal being sued

---

[1]   WSI uses the terms "employee" and "employment" in reference to Plaintiffs throughout without intending to accord the terms legal significance, but instead, for ease of reference. WSI is cognizant that Plaintiffs claim that they were improperly classified as independent contractors. WSI takes no position on this issue as it believes dismissal is appropriate for the other reasons outlined herein.

– are nearly indistinguishable.  Indeed, to the extent *Montoya* is distinguishable at all, it is because there were *more* facts evidencing a *greater* connection between the principal and the plaintiff than there are between Plaintiffs and WSI here.  And yet, the *Montoya* Court declined to impose "joint employer" liability.  There is no reason for a different result here.

For these reasons, and each of the reasons set forth below, WSI respectfully requests that the Court grant this Motion in its entirety.

## STATEMENT OF MATERIAL AND UNDISPUTED FACTS

WSI respectfully refers the Court to its Local Rule 56.1 Statement of Material and Undisputed Facts submitted herewith for a full recitation of the facts supporting WSI's Motion.

## ARGUMENT

### I.   THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Ahmad v. Daniyal Enter., LLC*, No. 14-CIV-1142 (SDW)(SCM), 2015 WL 6872481, at *2 (D.N.J. Nov. 9, 2015) (granting partial motion for summary judgment on NJWHL and Fair Labor Standards Act ("FLSA") claims).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact."
*Ahmad*, 2015 WL 6872481, at *2 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is only "material" if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.*; *Adami v. Cardo Windows, Inc.*, No. 12-2804 (JBS)(JS), 2014 WL 2586933, at *2 (D.N.J. June 10, 2014).  A dispute about a material fact is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Ahmad*, 2015 WL 6872481, at *2.

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005); *see also Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010).  The nonmoving party must "point to concrete evidence in the record which supports each essential element of its case."  *Black Care Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004).  If the nonmoving party fails to make a showing sufficient to establish a genuine dispute as to a matter for which it carries the burden of proof, the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## II.   THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS AGAINST WSI BECAUSE WSI DID NOT EMPLOY ANY PLAINTIFF

Plaintiffs allege that they were improperly classified as independent contractors under the NJWHL and, as a consequence, denied overtime pay.  Plaintiffs have embroiled WSI in this litigation on the theory that WSI is either a direct "employer" of Plaintiffs or a "joint employer" of Plaintiffs together with MXD and/or the MXD Subcontractors.[2]  Because it is undisputed that WSI has only the most tenuous connection with Plaintiffs and, in fact, no connection at all with the terms and conditions of their employment, WSI cannot be held liable under the NJWHL.  Accordingly, WSI respectfully submits that all claims against it should be dismissed.

---

[2]     Plaintiffs do not specify their theory of liability for WSI in the TAC beyond alleging that WSI is an "employer" for purposes of the NJWHL.  (TAC ¶ 21).  WSI addresses both analyses herein and the reasons why WSI may not be held liable under either.  WSI believes it unnecessary to analyze the "ABC Test," which governs the inquiry as to whether an individual is an employee or an independent contractor.  *See* N.J.S.A. 43:21-19(i)(6)(A)-(C); *Hargrove v. Sleepy's*, 220 N.J. 289, 316 (2015).  Aside from the fact that WSI takes no position on whether Plaintiffs were properly classified as independent contractors, there is no dispute that WSI did not directly or indirectly pay Plaintiffs any remuneration, (S.F. § 52), the threshold requirement under the ABC Test.  *See Gilchrist v. Div. of Emp't Sec.*, 137 A.2d 29 (N.J. Super. Ct. App. Div. 1957).  The other requirements of the ABC Test – degree of control, situs of services performed, and whether Plaintiffs could continue to provide services in their field without WSI – also cannot be met by Plaintiffs here.  If Plaintiffs nevertheless argue that this test should apply, WSI reserves the right to address the issue on reply.

**A.   It Is Undisputed That WSI Was Not Plaintiffs' <u>"Employer"</u>**

Plaintiff cannot hold WSI liable under the NJWHL as an "employer."  Under the NJWHL an "employer" is defined as:

[A]ny individual, partnership, association, corporation or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee.

N.J. STAT. ANN. § 34:11-56a1(g); *see also* N.J. STAT. ANN. § 12:56-2.1.1.  It is well-settled that "only a party who is an employer can be held liable for any alleged violation of the statute[]." *Chen v. Century Buffet & Rest.*, No. 09-1687 (SRC), 2012 WL 113539, at *2 (D.N.J. Jan. 12, 2012).  Because "the definitions of 'employer' and 'employee' under the FLSA and the NJWHL are virtually identical," *id.*, New Jersey Courts apply the FLSA's test for employer status to NJWHL claims.  *See, e.g.*, *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142 (3d Cir. 2014); *Shakib v. Back Bay Rest. Grp.,* Inc., No. 10-CV-4564, 2011 WL 4594654, at *3 n.2 (D.N.J. Sept. 30, 2011); *Ortiz v. Paramo*, No. 06-CV-3062, 2008 WL 4378373, at *4 (D.N.J. Sept. 19, 2008).

"When determining whether an employment relationship exists under the . . . NJWHL, courts must consider the totality of the circumstances and look to the 'economic realities' of the relationship." *Harris v. Scriptfleet, Inc.*, No. 11-4561 (SRC), 2011 WL 6072020, at *1-2 (D.N.J. Dec. 6, 2011).  The "economic realities" test requires a Court to consider:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation-supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer," (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties.

*Chen v. Domino's Pizza, Inc.*, No. 09-107 (JAP), 2009 WL 3379946, at *4 (D.N.J. Oct. 16, 2009) (citing *Pukowsky v. Caruso*, 312 N.J. Super. 171, 182-83 (App. Div. 1998), and granting Rule 12(b)(6) motion to dismiss on NJWHL claims advanced by pizza delivery drivers).

This District's decision in *Domino's Pizza* is illustrative. There, the plaintiff and the putative class were employed as non-exempt delivery drivers directly by a company called A Slice Above the Rest, Inc., a franchise of Domino's Pizza, Inc. *See id.* at *1. The plaintiff advanced claims for failure to pay overtime in violation of the FLSA and NJWHL. *See id.* At all relevant times, the owner of A Slice Above the Rest controlled the terms and conditions of the plaintiff's employment. The owner had the power to hire and fire plaintiff, determine his rate of pay and method of compensation, maintain employment records, set work schedules, and take steps to comply with the law. *See id.* at *2. Notably, the plaintiff was also required

to wear a Domino's uniform. *See id.* The Court determined that these facts disqualified Domino's from "employer" liability under the NJWHL because they did not evidence sufficient control over the plaintiff's employment. *See id.* at *5. Accordingly, the Court granted Domino's motion to dismiss. *See id.*

Here, considering those of the above-referenced factors that are applicable, the record makes clear that WSI cannot be held to be an "employer" of Plaintiffs. First, it is undisputed that WSI does not exercise any control over the "means and manner" of Plaintiffs' performance. The Subcontractors alone made the decisions to hire each of the Plaintiffs, determine their compensation, and set their schedules and hours of work without involvement from WSI. (S.F. ¶¶ 49, 51-52, 55-57). The Subcontractors alone also determined whether each of the Plaintiffs would work as a Driver and/or Helper on any given day and determined who each of the Plaintiffs would work with. (S.F. ¶¶ 58-59). Further, the Subcontractors alone assigned the routes that each Plaintiff would work on a given day. (S.F. ¶¶ 61-63). Finally, to the extent it is even relevant, WSI did not exercise any control over Plaintiffs while they were driving their routes; Plaintiffs communicated with MXD Dispatch almost exclusively except when customer service issues were involved.

(S.F. ¶¶ 38-41, 70).[3]  *See, e.g.*, *Artis v. Asberry*, No. G-10-3232012, 2012 WL 5031196, (S.D. Tex. Oct. 16, 2012) (finding supervision regarding quality and time of delivery insufficient); *Valdez v. Cox Commc'ns Las Vegas, Inc.*, No. 09-CV-1797-PMP-RJJ, 2012 WL 1203726, at *2-3 (D. Nev. Apr. 11, 2012) (communicating throughout day about updates insufficient).

Second, WSI did not furnish Plaintiffs with any equipment. The trucks driven by Plaintiffs are owned by their Subcontractors. (S.F. ¶ 4). The straps Plaintiffs use to secure the products they deliver, the blankets they use to wrap the same, and the dollies Plaintiffs use to effect the delivery are supplied exclusively by MXD or the Subcontractors. (S.F. ¶ 54). Even the uniforms Plaintiffs wear, while bearing the WSI logo,[4] are supplied by MXD. Simply put, WSI does not supply any equipment to Plaintiffs.

Third, each Plaintiff acknowledged that their pay was determined by their Subcontractor and that they were paid

---

[3]   Even when WSI Customer Service did become involved, the record reveals that WSI Customer Service interfaced with customers and that the bulk of the communications with Drivers continued to proceed through MXD Dispatch. (S.F. ¶¶ 41-42).

[4]   Notably, the uniforms do not state "Williams Sonoma" alone, but also include the phrase "Authorized Carrier Of." Merely wearing a uniform bearing the name of the alleged employer has been held insufficient to confer employer status. *See Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 673 (D. Md. 2000).

directly by their Subcontractors. (S.F. ¶ 51). Each Plaintiff confirmed that WSI had absolutely no role with respect to their compensation. (S.F. ¶ 52). The mere fact that the amount WSI contracted to pay MXD for its services might have indirectly affected the amount MXD decided to pay a Subcontractor, which in turn indirectly affected the amount that Subcontractor decided to pay to Plaintiffs, is too attenuated a basis to find this factor met. *See Montoya*, 2014 WL 3385116, at *6 (rejecting argument that "Home Depot indirectly exercised control over [plaintiff's] pay because the terms of Home Depot's contract with 3PD controlled what he was paid."); *Holmes v. FedEx Ground Package Sys., Inc.*, No. 12-CV-00030-BSM, 2013 WL 11041743, at *3 (E.D. Ark. Jan. 25, 2013) (dismissing FedEx as "employer" of driver hired by subcontractor where, *inter alia*, FedEx did not have any role in determining driver's compensation). Relatedly, with respect to the tenth and eleventh factors, there is no evidence that WSI contributed to any retirement plans or paid social security taxes for Plaintiffs.

Fourth, WSI had no involvement in the termination of any Plaintiff's service at the Distribution Center. Plaintiffs testified that they were either terminated directly by their Subcontractor without input or even notification to WSI, or that they voluntarily resigned to their Subcontractor without notification to WSI. (S.F. ¶¶ 72-73). Even if WSI could have

requested that MXD or a Subcontractor remove a Driver from the Distribution Center – a power that has no support in the record – this too would be insufficient to find this criteria met. *See Montoya*, 2014 WL 3385116, at *4; *Valdez*, 2012 WL 1203726, at *2-3.

Fifth, the delivery services provided by WSI are not an "integral part" of WSI's business. WSI is a specialty retailer of home furnishings and gourmet cookware, operating approximately 250 retail stores throughout the United States. (S.F. ¶ 1). The ultimate delivery of the products it sells to its customers – a process outsourced entirely to MXD – is ancillary to its primary business and has been held to be insufficient to support "employer" status in an identical context. *See Montoya*, 2014 WL 3385116, at *8 ("Montoya's contention, unsupported by anything beyond allegations, that 3PD's delivery services are 'integral' to Home Depot's business model is not enough . . . ."); *see also Molina v. Hentech, LLC*, No. 13-CV-111-ORL-22KRS, 2015 WL 1242790, at *7 (M.D. Fla. Mar. 18, 2015) (finding that plaintiffs' role in transporting rental cars from one rental facility to another was not "integral" to the defendant's rental car business).

Finally, neither WSI nor Plaintiffs had any intention that they would be in an employer-employee relationship. WSI reduced

its intention to writing in its Master Home Delivery Service Agreement with MXD, wherein it stated, in relevant part:

> In performing its duties under this Agreement, Exel Direct shall act as an independent contractor and not as an agent and/or employee of Williams-Sonoma. Neither Exel Direct itself, nor contract truckmen engaged by Exel Direct or employees or workers of said contract truckmen hired by said truckmen are to be considered employees of Exel Direct nor Williams-Sonoma insofar as the subject matter of this Agreement is concerned or in performing service under this Agreement for any purpose whatsoever.

(Stoler Decl. Ex. C at § 14). While this Agreement was admittedly not shared with Plaintiffs, nor were Plaintiffs parties thereto, Plaintiffs nevertheless each acknowledged that they did not understand WSI to be their employer. To be sure, each Plaintiff identified their Subcontractor or a supervisor of their Subcontractor as their "boss" because the Subcontractors "told them what to do." (S.F. ¶¶ 74-76). Their current allegations cannot stand in the face of these admissions.

In light of the foregoing, Plaintiffs are left only with the fact that they delivered WSI merchandise to WSI's customers from WSI's Distribution Center. This is simply insufficient to confer "employer" status on WSI. See *Montoya*, 2014 WL 3385116, at *8; *Domino's Pizza*, 2009 WL 3379946, at *4. Accordingly, Plaintiffs' claims against WSI should be dismissed.

**B.    It Is Undisputed That WSI Was Not Plaintiffs' "Joint Employer"**

    **1.    Applicable Standards**

Plaintiffs also cannot hold WSI liable as a "joint employer" together with MXD and/or the Subcontractors.  In this District, two or more entities may be deemed "joint employers" only where they "exert significant control over the same employees – [where] from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment." *In re Enterprise Rent-A-Car*, 683 F.3d at 468.  In determining whether an entity exercised sufficient control, Courts in this District consider four factors:

> (i) the alleged employer's authority to hire and fire the relevant employees;
>
> (ii) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment;
>
> (iii) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and
>
> (iv) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

*Id.* at 469; *see also Thompson*, 748 F.3d at 148 (applying the *Enterprise* test for "joint employer" to claims under NJWHL); *Ortiz*, 2008 WL 4378373, at *4 ("The Court applies the same ['joint employer'] analysis to the FLSA claims and the NJWHL

-13-

claims."); *Ruiz v. S. Jersey Painting Co.*, No. L-4456-11, 2013 WL 3762688, at *2-3 (N.J. App. Div. July 19, 2013) (dismissing "joint employer" claims alleged by painters employed by and paid by a subcontractor to the entity against whom they sought liability).

### 2. *Montoya v. 3PD, Inc.* Should Control Here

Courts in other jurisdictions have applied this analysis to truck drivers in the delivery context and have consistently held that the business whose merchandise is being transported is not a "joint employer" of the drivers delivering that merchandise. *See, e.g.*, *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012) (drivers of subcontracted courier company not employees of defendant shipping and logistics company); *Molina*, 2015 WL 1242790, at *3-8; *Holmes*, 2013 WL 11041743, at *3; *Artis*, 2012 WL 5031196 (drivers of subcontracted passenger transport companies not employees of defendant medical transportation and logistics company). *Montoya v. 3PD, Inc.*, in particular, is nearly indistinguishable from the facts here. *See Tan v. Mr. Pi's Sushi, Inc.*, No. 09-1579 (KSH), 2010 WL 5392754, at *2 (D.N.J. Dec. 21, 2010) (citing to *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), which established the "joint employer" test applied by the *Montoya* Court); *see also In re Enterprise Rent-A-Car*, 683 F.3d at 468 (citing to *Bonnette* favorably).

-14-

In *Montoya*, Home Depot contracted with 3PD, Inc. "to provide truck drivers for delivery service of its goods; this delivery service [was] known as 'last-mile transportation services.'" 2014 WL 3385116, at *1. 3PD, in turn, contracted with subcontractors to make deliveries for Home Depot. *See id.* The plaintiff provided delivery services to Home Depot through Big Dog Trucking & Material Handling, LLC, which had been selected to perform delivery services by 3PD. *See id.* The plaintiff received training from Home Depot employees concerning their "procedures for delivery," including "how to obtain delivery paperwork, where to park the delivery truck, and where to pick up the merchandise [he] was to deliver." *Id.* In addition, the plaintiff regularly communicated with a Home Depot-employed "Delivery Coordinator" throughout the course of his day concerning the status of his deliveries. *See id.* Finally, the plaintiff wore a uniform that included the logos of both 3PD and Home Depot. *See id.*

The plaintiff lodged claims under the FLSA and Arizona state law against both 3PD and Home Depot contending that he had been misclassified as an independent contractor and denied overtime. *See id.* The Court considered whether Home Depot was a "joint employer" of Plaintiff and identified the following factors as relevant: whether the alleged employer: (i) had the power to hire and fire the employees; (ii) supervised and

-15-

controlled employee work schedules or conditions of employment; (iii) determined the rate and method of pay; and (iv) maintained employment records. *See id.* at *2 (citing *Bonnette*, 704 F.2d at 1469). The Court also considered a host of ancillary factors such as who owned the necessary equipment, whether the work could be shifted from one worker to another, whether the employee had an opportunity for profit or loss, whether there was a permanence to the working relationship, and whether the services rendered were integral to the alleged employer's business. *See id.* at *3.

Applying these factors, the Court found that Home Depot was not a "joint employer" of the drivers selected by its logistics company, 3PD. *See id.* at *8. First, the Court noted that Home Depot did not accept applications from, interview, evaluate, or hire any of the drivers. *See id.* at *3. Second, the Court found that, while Home Depot could request that the plaintiff not provide services at its facility, it was not akin to having the power to fire him. *See id.* at *4. Third, the Court noted that Home Depot "did not supervise, train, evaluate, or discipline" the plaintiff. *Id.* at *4. Fourth, the Court found that Home Depot did not determine the plaintiff's hours, and at most, "required a certain number of delivery hours from 3PD, who in turn assigned hours to drivers to make those deliveries." *Id.* at *5. Fifth, the Court held that Home Depot's payment of

-16-

monies to 3PD for deliveries did not amount to direct or indirect control over the plaintiff's wages. *See id.* at *6. Finally, the Court noted that Home Depot maintained driver logs but not other personnel records. *See id.*

These facts, which the *Montoya* Court found *insufficient* to render Home Depot a "joint employer," are present here as well. First, it is undisputed that WSI did not accept applications from, interview, evaluate, or have any input into the hiring of any of the Plaintiffs. (S.F. ¶¶ 44-49). Second, the only evidence beyond Plaintiffs' rank speculation as to WSI's involvement is that each Plaintiff was either fired by or resigned to his Subcontractor without the involvement of WSI. (S.F. ¶¶ 71-72). Third, it is undisputed that WSI did not provide any training or supervision to Plaintiffs, which was given exclusively at the hands of their Subcontractor or MXD. (S.F. ¶¶ 35, 50). At most, WSI Customer Service interacted with Plaintiffs while they were on their routes for the limited purpose of addressing customer service issues and not for purposes of supervision. (S.F. ¶¶ 41-42). Fourth, it is undisputed that WSI had no input over Plaintiffs' schedules or even over the amount of trucks or delivery hours that were

necessary from MXD. (S.F. ¶¶ 55-57).[5] Fifth, it is undisputed that WSI made payments to MXD solely pursuant to the contract and did not pay the wages or have any influence over what was paid to Plaintiffs. (S.F. ¶¶ 17-22). Finally, WSI did not maintain employment records or other personnel records pertaining to Plaintiffs, including driver logs. (S.F. ¶ 24).

While these similarities are compelling, the *differences* are even more illustrative, as the Court in *Montoya* was presented with a significantly *greater* connection between the driver and Home Depot than the Plaintiffs have here with WSI, *and yet it still* declined to find "joint employer" liability. Specifically, unlike here: (i) Home Depot required the plaintiff to pass a background check and meet Department of Transportation requirements, *Montoya*, 2014 WL 3385116, at *3, which WSI did not; (ii) Home Depot directly provided the plaintiff with "delivery information and paperwork relating to the delivery," *id.* at *4, which WSI did not; (iii) Home Depot monitored the plaintiff's activities for the purpose of understanding what deliveries had been completed, *id.* at *5, which WSI did not; (iv) Home Depot may have reimbursed the plaintiff for fuel

---

[5]    The *Montoya* Court noted that Home Depot's need for deliveries to be made within a certain time frame did not translate into control over the hours worked by the plaintiff. *See Montoya*, 2014 WL 3385116, at *5. So too here: although WSI informed MXD of delivery windows, it does not alter the result. (S.F. § 27).

expenses, *id.* at *6, which WSI did not; (v) Home Depot
maintained driver time sheets and daily driver logs, *id.* at *7,
which WSI did not; (vi) Home Depot indirectly provided the
plaintiff with equipment by providing it to 3PD, *id.*, which WSI
did not; and (vii) Home Depot monitored the status of
Plaintiff's deliveries throughout the course of the day
directly, *id.* at *6-7, which WSI did not.  Each of these facts
evidence a *greater* connection between Home Depot and the *Montoya*
plaintiff than that found here between Plaintiffs and WSI, (S.F.
¶¶ 32-33, 38-43, 46-47, 54, 63, 70), and yet, again, the *Montoya*
Court declined to find Home Depot to be a "joint employer."  *See*
*Montoya*, 2014 WL 3385116, at *8.  The same result is appropriate
here.

### 3.    Plaintiffs Cannot Establish Joint Employment Under the *Enterprise* Test

Even putting aside *Montoya*, a strict application of the
*Enterprise* factors unequivocally supports the conclusion that
WSI was not a "joint employer" of Plaintiffs.  To begin, as set
forth above, WSI did not have any input into the decisions to
hire or fire Plaintiffs.  Plaintiffs all testified that they
submitted job applications to, interviewed with, and were hired
by their Subcontractors alone.  (S.F. ¶¶ 44-45, 48-49).
Plaintiffs also confirmed that they were either terminated by
their Subcontractors without the involvement of WSI or resigned

to their Subcontractors without notifying WSI. (S.F. ¶¶ 72-73). As such, the first *Enterprise* factor is met. *See Yu v. McGrath*, 597 F. App'x 62, 66 (3d Cir. 2014) (applying *Enterprise* factors and declining to find "joint employer" where alleged employer could not hire or fire plaintiff); *Molina*, 2015 WL 1242790, at *7 (finding lack of hiring or firing authority to weigh against finding "joint employer" status); *Holmes*, 2013 WL 11041743, at *3 (same); *Rios v. Airborne Express Inc.*, No. C-05-2092 VRW, 2006 WL 2067847, at *3 (N.D. Cal. July 26, 2006) (same).

In addition, WSI did not have any involvement with the terms and conditions of Plaintiffs' employment. Plaintiffs' pay was determined by, and paid by, the Subcontractors exclusively. (S.F. ¶¶ 51-52). Plaintiffs' schedules and hours of work were set by the Subcontractors alone. (S.F. ¶¶ 55-57). Plaintiffs' truck assignments, route assignments, designations as Drivers or Helpers, and co-worker assignments were determined by the Subcontractors without interference from MXD or WSI. (S.F. ¶¶ 58-63). Thus, the second *Enterprise* factor is met. *See Likes v. DHL Express (USA), Inc.*, 2012 WL 4899732 (N.D. Ala. Mar. 7, 2012) (rejecting "joint employer" allegation where subcontractor chose how many people it hired, interviewed and hired the plaintiffs without logistics company's assistance, decided the plaintiffs' schedules, and told the plaintiffs when they needed to report to work and when their day ended); *see*

*also* *Yu*, 597 F. App'x at 66; *Molina*, 2015 WL 1242790, at *7 (finding lack of input on compensation decisions to weigh against "joint employer" status); *Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1160 (C.D. Cal. 2003) (same).

Moreover, WSI was not involved in day-to-day supervision of Plaintiffs.  It is undisputed that WSI personnel had only limited contact with Plaintiffs during the morning "load out," which consisted solely of locating missing pieces for delivery, addressing damaged products, and providing "infrequent" demonstrations concerning how to assemble new products.  (S.F. ¶¶ 34-37, 64-68).  The "load out" process was monitored by MXD, precisely as had been contemplated in the Master Home Delivery Services Agreement.  (S.F. ¶ 35).

It is also undisputed that WSI personnel had only limited contact with Plaintiffs during the "on the road" delivery process.  Plaintiffs universally testified that their point-of-contact while on the road was either their Subcontractor or MXD Dispatch for purposes of addressing tardiness, customer unavailability, customer refusal of merchandise, or damage. (S.F. ¶¶ 40-43).  WSI became involved, if at all, through Customer Service.  However, WSI Customer Service largely interfaced with the customers directly, and not the Drivers, who received direction from MXD Dispatch.  (S.F. ¶¶ 41-42).  It is undisputed that WSI Customer Service became involved for the

purpose of managing WSI's customers rather than supervising or directing the work of Plaintiffs. (S.F. ¶ 41). Accordingly, the third *Enterprise* factor is met.[6]  *See Molina*, 2015 WL 1242790, at *5 (noting that "infrequent assertions of minimal oversight do not constitute the requisite degree of supervision); *Diaz v. U.S. Century Bank*, No. 12-21224-CIV, 2013 WL 2046548, at *7 (S.D. Fla. May 14, 2013) (dismissing allegations of joint employment where the alleged joint employer only provided general instructions when "non-routine" situations arose).

Finally, as set forth above, WSI did not maintain any records concerning Plaintiffs. (S.F. ¶ 24). The driver logs and trip manifests were provided by the Drivers directly to MXD, such that WSI did not even exercise temporary control over the same. (S.F. ¶ 24). It is therefore undisputed that each of the *Enterprise* factors are established.

*Enterprise* also directs that other unidentified factors that bear on the "total employment situation and the economic realities of the workplace relationship" should also be considered. *In re Enterprise Rent-A-Car*, 683 F.3d at 469.

---

[6]   The third *Enterprise* factor also contemplates the alleged "joint employer's" ability to discipline the alleged employee. While some Plaintiffs speculated that WSI necessarily had the power to discipline them, no Plaintiff was ever disciplined by WSI, rendering any argument in this regard wholly speculative. (S.F. ¶ 71).

Additional factors other Courts have considered include: (i) the alleged employer's power to determine pay rates and methods of payment; (ii) the alleged joint employer's preparation of payroll and payment of wages; (iii) the ownership of the facilities where the work occurred; (iv) whether the worker performs a job integral to the alleged joint employer's business; and (v) the alleged joint employer's relative investments in equipment and facilities.[7] *See generally, e.g.*, *Layton*, 686 F.3d 1172; *Likes*, 2012 WL 4899732.

WSI did not own the facilities where Plaintiffs performed the bulk of their work. While WSI, of course, owned the Distribution Center, other Courts have concluded that where a plaintiff spends the majority of his time in a vehicle making deliveries, the vehicle constitutes the plaintiff's "work premises." *See Layton*, 686 F.3d at 1180; *Likes*, 2012 WL 8499732, at *9. Here, each of the Subcontractors owned each of the trucks that each of the Plaintiffs drove. (S.F. ¶¶ 4, 16). "Because [Plaintiffs] were not dependent on [WSI] to provide [vehicles] so that [they] could accomplish their core duty – delivering," this factor weighs against a finding of joint employment. *See Layton*, 686 F.3d at 1180; *Likes*, 2012 WL 8499732, at *9-10.

---

[7]    Factors "i" and "ii" have been addressed repeatedly throughout this brief and need not be addressed again.

The delivery function performed by Plaintiffs was not integral to WSI's business. WSI is in the home furnishings and gourmet cookware retail business. (S.F. ¶ 1). The delivery of its products to its customers is entirely tangential thereto. Indeed, hundreds of companies rely on delivery companies to transport their products, without concern that retention of a delivery company might transform their employees into the retaining company's own. In any event, this factor is alone insufficient to support "joint employer" status. *See Montoya*, 2014 WL 3385116, at *8 ("Montoya's contention . . . that 3PD's delivery services are 'integral' to Home Depot's business model is not enough . . . .").

WSI's ownership of the Distribution Center does not favor "joint employer" status. In *Layton*, the logistics company owned the warehouses where packages were received and stored. *See* 686 F.3d at 1181. Yet, the Court held that this factor did not suggest a finding of "joint employment" because both the logistics company and the subcontractor made significant investments commensurate with their size. *Id.* Here, the Subcontractors each own the trucks Plaintiffs drove, which presumably represented the largest assets of the Subcontractors, whereas the Distribution Center property represents an insignificant portion of WSI's assets. This factor should therefore not favor "joint employer" status particularly when

considered against the great weight of the other factors cutting decidedly against it.

Finally, even the Plaintiffs themselves did not believe that they had an employment relationship with WSI. Each Plaintiff testified that they believed their Subcontractor to be their "boss" because the Subcontractors were the persons who "told them what to do." (S.F. ¶¶ 74-76). Thus, both objective and subjective factors counsel that WSI was not a "joint employer" of Plaintiffs.

In short, the undisputed evidence categorically favors WSI such that no reasonable jury could find that WSI was a "joint employer" of Plaintiffs. Accordingly, WSI respectfully submits that its motion for summary judgment should be granted in its entirety. *See In re Enterprise Rent-A-Car*, 683 F.3d at 471 (noting that summary judgment may be granted even where not every factor weighs in favor of the movant); *Montoya*, 2014 WL 3385116, at *4; *Holmes*, 2013 WL 11041743, at *3 (dismissing FedEx as "joint employer" of driver on summary judgment where driver was directly employed by subcontractor where subcontractor "set [plaintiff's] work schedule, established his delivery route, and owned and maintained the truck [he] drove.").

## CONCLUSION

For the foregoing reasons, WSI respectfully requests that summary judgment be granted in its favor and that the Third Amended Complaint be dismissed, with prejudice, as against the Company.


Date: New York, NY          Respectfully submitted,
      November 20, 2015
                       **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**


By: /s/ Jonathan Stoler
        Jonathan Stoler
        Brian D. Murphy (*pro hac vice*)

        30 Rockefeller Plaza
        New York, New York 10112
        Telephone:  (212) 653-8700
        Facsimile:  (212) 653-8701

        *Attorneys for Defendant Williams-
        Sonoma, Inc.*