NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CAMILLO ECHAVARRIA, JONATHAN MARK ADELS, JAMES LABRIE, MAYCOL GOMEZ, PLINIO ANGULO, JOSE CRUZ, HENRY RIVERA, JOSE SANTOS, REINALDO RODRIGUEZ, ANDRES CRUZ and CARLOS VARGAS, on behalf of themselves and all other similarly situated persons, | Civ. No. 15-6441<br><br>OPINION |
|         Plaintiffs, | |
| v. | |
| WILLIAMS SONOMA, INC., J&J TRUCKING, INC., MXD, INC. (f/k/a EXEL DIRECT, INC.), ABC CORP. and JANE & JOHN DOES, | |
|         Defendants. | |

THOMPSON, U.S.D.J.

INTRODUCTION

        This matter is before the Court upon multiple motions.  All plaintiffs ("Plaintiffs") have moved for summary judgment and class certification.  (ECF Nos. 19-20). Defendants Williams-Sonoma, Inc. ("WSI") and MXD Group, Inc. ("MXD") oppose both motions.  (ECF Nos. 27-29).  WSI and MXD have moved separately for summary judgment.  (ECF Nos. 21-22).  Plaintiffs oppose defendants' motions for summary judgment.  (ECF Nos. 25-26).  The Court has decided the motions based on the written submissions of the parties and a hearing held on February 1, 2016.  For the reasons stated below, WSI's motion will be granted, and all other motions will be denied.

1

<u>BACKGROUND</u>

WSI sells a variety of home goods, including furniture.  WSI stores some of its furniture in a warehouse in Monroe, New Jersey.  WSI engaged MXD for final mile furniture deliveries, and MXD had a small dispatch office in WSI's Monroe warehouse that coordinated furniture deliveries.  MXD advertises itself on its website as a logistics company that specializes in "final mile white glove delivery of large footprint items." The precise nature of MXD's business is at issue in this case.  MXD did not have its own delivery trucks, but instead hired various transportation companies to actually deliver WSI's furniture to its customers.  These transportation companies in turn hired drivers and "helpers" to drive the transportation companies' trucks and assist in delivering the furniture.

Plaintiffs previously worked at WSI's warehouse.  Ten of the plaintiffs worked as drivers or helpers.  This opinion will refer to them as the "Driver/Helper Plaintiffs." They typically arrived at the warehouse early in the morning, loaded furniture onto their assigned truck, and then left to make their deliveries.  The Driver/Helper Plaintiffs were paid by the various transportation companies.  One of the plaintiffs, Jose Cruz, ran a small transportation company.  Unlike the Driver/Helper Plaintiffs, he owned his own trucks, he hired a driver and helpers to work with him, and he was paid by MXD.  (Jose Cruz Dep. 38-6 at 89-90, 144, 180).  None of the plaintiffs were paid by WSI.

The Driver/Helper Plaintiffs allege that they were paid a flat daily rate, plus customer tips, without overtime pay.  (Pls.' Statement of Facts, ECF No. 20-2 at 11-12). Jose Cruz alleges that he signed an Independent Truckman's Agreement with MXD, and was paid per delivery.  (*Id.*).  All plaintiffs allege that they were misclassified as

2

independent contractors, when they should have been classified as employees, and paid overtime in accordance with The New Jersey State Wage and Hour Law ("NJWHL"). (*See* Pls.' Third Am. Compl., ECF No. 1 at 6-7).

Plaintiffs allege that even though the Driver/Helper Plaintiffs were paid by the transportation companies, MXD and WSI are nevertheless employers liable under the NJWHL because they controlled the manner and means of Plaintiffs' employment. (*Id.* at 5). Plaintiffs allege that such control included: telling Plaintiffs how to resolve issues with customers (Pls.' Statement of Facts, ECF No. 20-2 at ¶ 36), supervising Plaintiffs' performance on a daily basis (*Id.* at ¶ 51), requiring Plaintiffs to wear a uniform that included the Williams-Sonoma logo (*id.* at ¶ 55), controlling the timing and order of their deliveries (*Id.* at ¶ 63), and requiring Plaintiffs to check in with the dispatch office repeatedly throughout the day (*id.* at ¶ 79). Plaintiffs emphasize that they lacked discretion in how to perform their jobs. (*Id.* at ¶ 87, 92).

WSI and MXD both deny that they were Plaintiffs' employers under the NJWHL.[1] MXD additionally argues that all Plaintiffs were properly classified as independent contractors. Contrary to Plaintiffs' version of the facts, MXD asserts that: the transportation companies were the ones that hired, instructed, and paid the Driver/Helper Plaintiffs (MXD's Mot. for Summ. J., ECF No. 22-1 at 19), MXD had little communication with the Driver/Helper Plaintiffs throughout the day (*id.* at 20), and Jose Cruz had sufficient independence to be correctly classified as an independent contractor (*id.* at 25-26). MXD emphasizes that it is not a delivery company, but merely

---

[1] MXD acknowledges it had an Independent Truckman's Agreement with Jose Cruz. (MXD's Statement of Facts, ECF No. 22-2 at ¶ 8).

"facilitates the delivery [of WSI's furniture] through independent-contractor transportation companies that deliver products with the respective companies' own trucks and workers."  (*Id.* at 6-7).

Plaintiffs filed a complaint alleging violations of the NJWHL in the Superior Court of New Jersey in September 2012.  (ECF No. 1).  The case was removed to this Court in November 2014, remanded due to an insufficiently large amount in controversy, then removed again in August 2015 once the amount in controversy was sufficiently increased.  (*Id.* at 5-7).  The parties stipulated to submit all motions for summary judgment and Plaintiffs' motion for class certification on November 20, 2015, after almost all discovery was completed.  (ECF No. 7 at 9-10).   Each party's Motion for Summary Judgment and Plaintiffs' Motion for Class Certification are presently before the Court.

<u>LEGAL STANDARDS</u>

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion."  Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).  In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).  More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party.  *Id.* at 248-49.  The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex,* 477 U.S. at 322.

A class may be certified pursuant to Fed R. Civ. P. 23(a) when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).  "Upon finding each of these prerequisites satisfied, a district court must then determine that the proposed class fits within one of the categories of class actions enumerated in Rule 23(b)."  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011).  If the proposed class wishes to utilize Rule 23(b)(3), the plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The burden is on the plaintiffs to prove that all the requirements of Rule 23 have been satisfied.  *In re*

*Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311-12.  If there are any doubts as to whether the requirements have been met, certification should be denied.  *Id.* at 321.

<u>DISCUSSION</u>

**A.  WSI's Motion for Summary Judgment**

WSI moved for summary judgment on the sole ground that it did not employ any of the Plaintiffs.  WSI offers two tests that may be used to determine who a plaintiff's employer is: the "economic realities" test used under the federal Fair Labor Standards Act, and the "joint employer" theory discussed in *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462 (3d Cir. 2012).  Plaintiffs argue that the proper test is the "ABC" Test endorsed by *Hargrove v. Sleepy's, LLC*, 106 A.3d 449 (N.J. 2015).

*Hargrove* answered the following certified question from the Third Circuit: "which test should apply under New Jersey law to determine an employee's status for purposes of the Wage Payment Law (WPL), and the Wage and Hour Law (WHL)"?  *Hargrove*, 106 A.3d at 453 (citations omitted).  The New Jersey Supreme Court concluded that "the 'ABC' test . . . governs whether a plaintiff is an employee or independent contractor for purposes of resolving a wage-payment or wage-and-hour claim."  *Id.*  *Hargrove* does not discuss which test a court should use to determine who employed a given plaintiff.  The issue simply did not come up in the case: the *Hargrove* plaintiffs had each signed an Independent Driver Agreement directly with the defendant, who classified them as independent contractors.  *Id.*

Plaintiffs in this case do not have any such direct relationship with the defendants, with the exception of Jose Cruz, who had an Independent Truckman's Agreement with

MXD.  Therefore, before applying the ABC test to determine if Plaintiffs were properly classified as independent contractors, the Court must determine who employed Plaintiffs. The New Jersey Supreme Court has not yet addressed how to determine who is a liable employer under the NJWHL.

WSI discusses two tests that have been used in this district.  The first test WSI discusses is the economic realities test.  Courts in New Jersey have previously utilized variations of the economic realities test to determine who is an employer under the NJWHL.  *Rong Chen v. Century Buffet & Rest.*, No. 09-1687, 2012 WL 113539, at *2 (D.N.J. Jan. 12, 2012); *Chen v. Domino's Pizza, Inc.*, No. 09-107, 2009 WL 3379946, at *4 (D.N.J. Oct. 16, 2009); *see also Thompson v. Real Estate Mortgage Network*, 748 F.3d 142 (3d Cir. 2014).  This test is borrowed from the federal Fair Labor Standards Act, which contains virtually identical definitions of "employer" and "employee" as the definitions in the NJWHL.  *Rong Chen*, 2012 WL 113539, at *2.  Under the economic realities test, courts must examine the totality of the circumstances to determine whether the economic realities of the situation indicate that an employment relationship existed. *Chen*, 2009 WL 3379946, at *4.  Relevant factors include: (1) who hired and fired the workers, (2) who controlled and supervised the workers, (3) who determined the workers' salaries, and (4) who maintained the workers' employment records.  *Shakib v. Back Bay Rest. Grp., Inc.*, No. 10-4564, 2011 WL 4594654, at *3 (D.N.J. Sept. 30, 2011); *Kwee Ling Tan v. Mr. Pi's Sushi, Inc.*, No. 09-1579, 2010 WL 5392754 at *2 (D.N.J. Dec. 21, 2010).  New Jersey courts have examined a range of other factors including who furnished the workers' equipment, whether the workers received benefits, and the intention of the parties.  *Chen*, 2009 WL 3379946, at *4.  Examination of any of these

factors is fact-intensive, and therefore it is rare for a court to determine who employed a given plaintiff on summary judgment. *Kwee Ling Tan*, 2010 WL 5392754, at *2.

Despite this high bar, WSI is able to show that it did not employ Plaintiffs under the economic realities test. WSI did not hire or fire Plaintiffs.[2] (WSI's Statement of Facts, ECF No. 21-3 at ¶¶ 49, 72-73; Pls.' Response to WSI's Statement of Facts, ECF No. 26-1 at ¶¶ 49, 72-73). WSI did not control or supervise Plaintiffs, aside from communicating through MXD how certain customer issues should be resolved. (*Id.* at ¶¶ 41-42). WSI was not involved in determining salaries, and it did not maintain Plaintiffs' records, aside from receiving copies of delivery manifests. (*Id.* at ¶¶ 24, 51-52).

WSI is separated from the Driver/Helper Plaintiffs by two levels: MXD and the transportation companies. It is separated from Jose Cruz only by a single level, but the record reflects that WSI never had more than occasional interactions with any Plaintiffs. Plaintiffs do not address the economic realities test directly, but they argue that WSI had an employment relationship with Plaintiffs because of certain connections including: WSI allegedly communicated its concerns twice a week to MXD (who would then communicate any relevant concerns to Plaintiffs), WSI required Plaintiffs to wear uniforms that included with Williams-Sonoma logo, and WSI had standards that Plaintiffs had to meet. (Pls.' Mot. for Summ. J., ECF No. 20 at 17-18). These sorts of attenuated connections at best partially meet only one of the four prongs of the economic realities test, which is insufficient to preclude summary judgment on this point.

---

[2] Jose Cruz alleged in his deposition that he was fired by MXD because a WSI employee wanted him to be fired. (Jose Cruz Dep. ECF No. 38-6 at 33). Plaintiffs fail to cite any other deposition testimony that suggests WSI was otherwise involved in hiring or firing decisions in their response to WSI's Statement of Facts. (Pls.' Response to WSI's Statement of Facts, ECF No. 26-1 at ¶¶ 49, 72-73).

WSI also discusses the "joint employer" theory explained in *In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litigation* ("*Enterprise*").  In *Enterprise*, the Third Circuit explained that two parties may be joint employers if they exercise "significant control" over their workers.  *Enterprise*, 683 F.3d at 468.  The Third Circuit established factors for the joint employer test that are very similar to those used in the economic realities test:

> (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like.

*Id.* at 469.  The Court went on to explain that these factors should not be "blindly applied," rather courts should examine all relevant evidence.  *Id.*  Considering the record as a whole, and the similar factors explored above under the economic realities test, WSI compellingly argues that no reasonable jury could find that they were Plaintiffs' joint employer.  Even if as Plaintiffs allege, WSI had some authority over terminations or setting standards for Plaintiffs, the record simply does not show WSI exercising any measure of "significant control" over Plaintiffs.  Since no reasonable jury could find that WSI was Plaintiffs' employer under either the economic realities test or the joint employer test, WSI's summary judgment motion will be granted.

**B.  Plaintiffs' Motion for Summary Judgment**

Plaintiffs argue that they should prevail on summary judgment because the defendants cannot rebut the ABC test's presumption that they were employees, not independent contractors.  However, Plaintiffs fail to address the question of who actually employed them.  As explained above, courts may not apply the ABC test before

determining who employed a plaintiff.  Since the defendants did not directly hire, fire, or

pay the Driver/Helper Plaintiffs, Plaintiffs would need to successfully argue that the

defendants were their employers before this Court could apply the ABC test and

potentially grant summary judgment to Plaintiffs.  Plaintiffs' motion for summary

judgment therefore will be denied as to the Driver/Helper Plaintiffs.

Unlike the Driver/Helper Plaintiffs, Jose Cruz had an Independent Truckman's

Agreement with MXD.  (Jose Cruz Dep., ECF No. 38-6 at 181).  Therefore, like the

plaintiffs in *Hargrove*, who each had an "Independent Driver Agreement" with the

defendant, Jose Cruz's claim may be analyzed under the ABC test.  *See Hargrove*, 106

A.3d at 453.  The ABC test presumes that an employer's worker is an employee under the

NJWHL unless an employer can show:

> (A) Such individual has been and will continue to be free from control or
> direction over the performance of such service, both under his contract of
> service and in fact; and
> (B) Such service is either outside the usual course of the business for which
> such service is performed, or that such service is performed outside of all the
> places of business of the enterprise for which such service is performed; and
> (C) Such individual is customarily engaged in an independently established
> trade, occupation, profession or business.

*Id.* at 458 (quoting N.J. Stat. Ann. § 43:21–19(i)(6)).  If an employer fails to satisfy any

of the above three prongs, the worker is classified as an employee under the NJWHL.  *Id.*

Plaintiffs argue that they are all employees, and they do not make any separate

arguments about Jose Cruz.  There is evidence in the record that MXD exerted control

over Jose Cruz, and that furniture delivery is part of MXD's usual course of business.

(Jose Cruz Dep., ECF No. 38-6 at 95-96 (discussing the need to follow MXD's "laws");

Pls.' Statement of Facts, ECF No. 20-2 at ¶¶ 2, 78 (describing MXD's business)).

However, MXD strenuously rebuts each prong of the ABC test.  On the A prong, MXD

10

notes that Jose Cruz arranged for his own training, owned his own trucks and equipment, and hired his own drivers and helpers.  (Jose Cruz Dep., ECF No. 38-6 at 89-90, 144-145, 152-154).  On the B prong, MXD notes that Jose Cruz did not work in an MXD facility, and argues that MXD's business is solely about logistics, not deliveries.  (MXD's Opp'n to Pls.' Mot. for Summ. J., ECF No. 28 at 11-12).  On the C prong, MXD argues that Jose Cruz is an independent delivery contractor, since he performed furniture deliveries with his trucks before and after his time with MXD.  (*Id.* at 14; Jose Cruz Dep., ECF No. 38-6 at 22-24, 35).

In evaluating Plaintiffs' motion for summary judgment, this Court must view the inferences raised by the underlying facts in the light most favorable to the opposing party. *Curley*, 298 F.3d at 277.  Viewed in this light, the evidence is not "so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.  Rather, there is sufficient evidence in the record to suggest that Jose Cruz may have been an independent contractor under the ABC test.  Therefore, Plaintiffs' motion for summary judgment will be denied as to all plaintiffs.

### C.  MXD's Motion for Summary Judgment

MXD makes a number of arguments in its motion for summary judgment.  The Court will address each argument in turn.

### 1.  *The Joint Employer Test*

MXD argues that under the joint employer test articulated in *Enterprise*, MXD did not employ the Driver/Helper Plaintiffs, and therefore is not liable under the NJWHL. To reiterate, the four *Enterprise* factors are:

> (1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including

compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like.

683 F.3d at 469.  On the first factor, MXD states that it did not hire or fire the Driver/Helper Plaintiffs.  However, MXD exercised some authority over the hiring of the Driver/Helper Plaintiffs by requiring that the Driver Helper/Plaintiffs fill out MXD paperwork for their corporate office in Ohio, performing multiple background checks, and disallowing the hiring of any drivers with insufficiently clean driving records.  (Jamie Rackett Dep., ECF No. 20-6 at 82-83; Jose Cruz Dep., ECF No. 38-6 at 97).  On the second *Enterprise* factor, MXD argues that it did not set the conditions of the Driver/Helper Plaintiffs' employment.  MXD notes that the transportation companies controlled which truck the Driver/Helper Plaintiffs had to work on each day, who they would be working with, and where they should park the truck at the end of the day. (MXD's Mot. for Summ. J., ECF No. 22 at 18).  However, MXD also set certain conditions of employment.  MXD generated delivery routes for the Driver/Helper Plaintiffs each day, addressed how the Driver/Helper Plaintiffs dressed for work, and required them to check in from the road on a regular basis.  (Pls.' Statement of Facts, ECF No. 28-2, at ¶¶ 57, 61, 79-80).

On the third *Enterprise* factor, MXD argues that they did not manage or discipline the Driver/Helper Plaintiffs.  There is evidence in the record that some of the Driver/Helper Plaintiffs saw only the transportation companies as their supervisors.  (*See, e.g.*, Camillo Echavarria Dep., ECF No. 38-11 at 172 (stating that he believed his only supervisor was his transportation company boss)).  However, there is also evidence in the record that MXD held regular meetings on how the drivers should do their jobs,

supervised Plaintiffs during the morning load-out process, and required Plaintiffs to call

to ask permission before changing the order of their delivery stops.  (Plinio Angulo Dep.,

ECF No. 38-9 at 52-53; Jose Santos Dep., ECF No. 38-7 at 37-38; Maycol Gomez Dep.,

ECF No. 38-8 at 36; Mark Adels Dep., ECF No. 38-5 at 74-75).  On the final *Enterprise*

factor, MXD provides convincing evidence that they did not control the Driver/Helper

Plaintiffs' Records.  (MXD's Mot. for Summ. J., ECF No. 22 at 21).

     While the fourth factor cuts clearly in favor of MXD, the other factors and

relevant evidence in the record do not clearly favor MXD.  A reasonable jury could find

that under the *Enterprise* test, MXD was the Driver/Helper Plaintiffs' joint employer, and

that therefore MXD is liable under the NJWHL.  MXD will therefore not be granted

summary judgment on this point.

     2.  *The ABC Test*

     i.  <u>When the ABC Test Applies</u>

     MXD argues that an employment relationship only exists when an employer

provides remuneration for personal services.  Without remuneration, MXD argues, there

is no employment relationship, and the ABC test is not applied.  MXD argues that the

ABC test cannot be applied to them because they did not provide remuneration to any

Plaintiffs.

     MXD's argument is based on one New Jersey case from 1957 about the state's

Unemployment Compensation Act, and several out-of-circuit cases.  (MXD's Mot. for

Summ. J., ECF No. 22 at 22-24).  These cases do not control here.  As explored above, an

employer is liable under the NJWHL if it acted as a plaintiff's direct or joint employer.

MXD admits as much earlier in its brief.  (*See id.* at 16).  The *Enterprise* test does not

require direct remuneration.  Neither does the NJWHL.  *See* N.J. Stat. Ann. § 34:11-56a1(g) (defining "employer").  Therefore, a jury could find that MXD had an employment relationship with Plaintiffs, even absent direct remuneration.  If a jury found that MXD was Plaintiffs' employer, then the ABC test would be used to determine if Plaintiffs should have been classified as employees under the NJWHL.  *Hargrove*, 106 A.3d at 453.

### ii.   *Application of the ABC Test*

MXD next argues that under the ABC test, Plaintiffs were properly classified as independent contractors.  To reiterate, the ABC test assumes that an employer's worker is an employee, not an independent contractor, unless an employer can show:

> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

*Id.* at 458 (quoting N.J. Stat. Ann. § 43:21–19(i)(6)).  If an employer fails to satisfy any of the above three prongs, the worker is found to be an employee under the NJWHL.  *Id.*

On the A prong, MXD refers to its previous arguments regarding control under the *Enterprise* test.  These arguments largely rest on evidence that the transportation companies controlled the Driver/Helper Plaintiffs.  MXD also argues that it did not exert control over Jose Cruz because MXD did not train Cruz, provide him with trucks or equipment, and Cruz hired others to work for him.  These arguments fail to demonstrate that MXD did not exert control over the Plaintiffs.  While the transportation companies exerted control over the Driver/Helper Plaintiffs, this fact does not preclude MXD from

also exerting control over them.  There is significant evidence in the record that MXD did exert control over the Driver/Helper Plaintiffs.  MXD told the Driver/Helper Plaintiffs when they needed to make their deliveries, required them to check in from the road, and told them what to do when they encountered a problem.  (*See* MXD's Responses to Pls.' Statement of Facts, ECF No. 28-2 at ¶¶ 78-85).  MXD sometimes exerted control over Jose Cruz in the same ways, since he frequently performed the same functions as the Driver/Helper Plaintiffs.  (*See* Jose Cruz Dep., ECF No. 38-6 at 150-151; *id.*).

Since there is a genuine issue of material fact regarding MXD's control over Plaintiffs, MXD is unable to satisfy the A prong of the ABC test on summary judgment. Under the ABC test, if an employer fails to satisfy any one prong, the workers must be classified as employees.  Therefore, the Court will not grant MXD summary judgment under the ABC test.

### 3.  *The FAAAA*

MXD argues that the Federal Aviation Administration Authorization Act of 1994 ("FAAAA") preempts Jose Cruz's claim.  The FAAAA provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).  This provision mirrors language from the Airline Deregulation Act of 1978 ("ADA"), and FAAAA cases therefore often apply the preemption analyses from ADA cases.  *See, e.g.*, *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008).

The Supreme Court has stated that the preemption provision expresses a "broad pre-emptive purpose" because it preempts any laws that "relate" to a carrier's prices,

routes, or services.  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).

However, this preemption is limited in that it does not preempt laws that only have a

"tenuous, remote, or peripheral" effect on carrier's prices, routes, or services.  *Rowe*, 552

U.S. at 371 (quoting *Morales*, 504 U.S. at 390).

 MXD argues that it is a motor carrier, and the FAAAA preempts Jose Cruz's

claim because "it seeks to substitute New Jersey law in place of his Agreements to

provide services."  (MXD's Letter of Feb. 29, 2016, ECF No. 52).  MXD stresses that it

does not ask the Court to hold that the FAAAA categorically preempts the NJWHL, but

only to hold that Jose Cruz's claim is preempted because it seeks to replace his

independent contractor agreement with employment terms dictated by the NJWHL.  *Id.*

It is a matter of first impression in the Third Circuit whether the FAAAA may preempt a

claim made under the NJWHL and the ABC test.

 MXD drew the Court's attention to a recent First Circuit opinion, *Schwann v.*

*FedEx Ground Package System, Inc.*, No. 15-1214, 2016 WL 697121 (1st Cir. Feb. 22,

2016), which addressed a claim under the Massachusetts Independent Contractor Statute.

*Id.*  The First Circuit held that the FAAAA preempted the application of the second prong

of Massachusetts' ABC test to the defendant FedEx.  *Schwann*, 2016 WL 697121 at *1.

Massachusetts' version of the ABC test states:

> (a) . . . an individual performing any service . . . shall be considered to be
> an employee . . . unless:--
> (1) the individual is free from control and direction in connection with the
> performance of the service, both under his contract for the performance of
> service and in fact; and
> (2) the service is performed outside the usual course of the business of the
> employer; and,
> (3) the individual is customarily engaged in an independently established
> trade, occupation, profession or business of the same nature as that involved
> in the service performed.

Mass. Gen. Laws Ann. ch. 149, § 148B (West).  The First Circuit's preemption analysis focused "upon the manner in which Prong 2 of the Massachusetts Statute would apply to FedEx's operations."  *Schwann*, 2016 WL 697121 at *6.  The Court was particularly concerned that Prong 2 would "significantly affect how FedEx provides good and efficient service."  *Id.* at *8.  Under the plaintiffs' proposed application of Prong 2, FedEx could not hire individuals as independent contractors to handle part of its routes, even if those individuals acted quite independently.  *Id.* at *7-8.  The First Circuit concluded that such an intrusion into how FedEx could conduct its business was not compatible with the FAAAA's purpose to avoid an unwieldy patchwork of state regulations.  *Id.* at *7.

The First Circuit's conclusion stands in tension with the case law from other circuits.  In *Dilts v. Penske Logistics, LLC*, 769 F.3d 637 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2049 (2015), the Ninth Circuit held that California's meal and rest break laws were not preempted by the FAAAA.  The Ninth Circuit's reasoning was premised on the laws at issue not being sufficiently "related to" the defendant's prices, routes, or services. *Dilts*, 769 F.3d at 640.  The Court noted that virtually any kind of state regulation may carry some cost, but "generally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted, even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide."  *Id.* at 646.

The Seventh Circuit has highlighted that labor laws in particular "which regulate[] the motor carrier as an employer, [as] often too 'remote' to warrant FAAAA

17

preemption." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1054 (7th Cir. 2016).

Additionally, the Seventh Circuit articulated a line between laws affecting a carrier's

contracts with its *consumers*, and laws affecting a carrier's contracts with its *employees*.

The Supreme Court has only found FAAAA preemption where state laws affected a

carrier's contracts with its *consumers*. *See, e.g.*, *Morales*, 504 U.S. at 388; *Rowe*, 552

U.S. at 372. "Laws that merely govern a carrier's relationship with its workforce,

however, are often too tenuously connected to the carrier's relationship *with its*

*consumers* to warrant preemption." *Costello*, 810 F.3d at 1054 (emphasis in original).

    MXD does not discuss how the proposed application of the NJWHL will affect its

relationship with its consumers. MXD argues that Jose Cruz's claim clearly refers to

MXD's services, and therefore the connection between his claim and MXD's services is

not too "tenuous, remote, or peripheral" to be preempted. *See Rowe*, 552 U.S. at 371.

However, Jose Cruz's claim concerns the services he provided MXD; neither side

discusses how MXD's services to its consumers would be affected by the application of

the NJWHL. This stands in stark contrast to the recent First Circuit opinion, which based

its preemption holding on the effect that the application of the Massachusetts statute

would have on how FedEx is able to conduct its business and service its consumers. It is

not apparent how the proposed application of the NJWHL would affect MXD's prices,

routes, or services any more than dozens of other "generally applicable background

regulations" that the Ninth and Seventh Circuits have held are too remote to be

preempted by the FAAAA. *See Dilts*, 769 F.3d at 646; *Costello*, 810 F.3d at 1051.

    Lastly, while the Third Circuit has not addressed this issue directly, it has

provided some helpful language about ADA/FAAAA preemption generally. In an ADA

case, the Third Circuit highlighted "the well-established principle that 'courts should not lightly infer preemption.'" *Gary v. Air Grp., Inc.*, 397 F.3d 183, 190 (3d Cir. 2005) (quoting *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987)). Moreover, this principle "is particularly apt in the employment law context which falls 'squarely within the traditional police powers of the states, and as such should not be disturbed lightly.'" *Id.* (citation omitted). The Third Circuit suggested that "garden variety employment claim[s]" in particular are not preempted by the ADA. *Id.* at 189.

This Court will not infer preemption in this traditional area of state power when MXD has failed to argue that the NJWHL will have the kind of "significant impact" on its prices, routes, or services that Congress sought to prevent under the FAAAA. *Rowe*, 552 U.S. at 371.

### 4. *Plaintiffs Labrie, Rodriguez, and Rivera's Overtime Claims*

MXD argues that three of the Driver/Helper Plaintiffs do not have valid overtime claims because if their flat daily rates were divided by the hours they worked, the resulting hourly wages would meet the statutory minimum wage and minimum overtime wage for truck drivers and helpers. MXD offers no case law to support this approach, and the statute they cite explicitly contemplates that drivers and helpers shall receive "an overtime rate," not simply a sufficiently high daily flat rate. N.J. Stat. Ann. § 34:11-56a4. Laws mandating a higher overtime rate "discourage the employer from requiring the employees to work excessive hours*." New Jersey Dep't of Labor v. Pepsi-Cola*, No. A-918-00T5, 2002 WL 187400, at *96 (N.J. Super. Ct. App. Div. Jan. 31, 2002). Under a flat rate approach, employers are incentivized to have employees work longer hours, which results in a decreasing hourly wage. *See id.* According to Plaintiffs' deposition

testimony, their flat rates were in fact often accompanied by long hours.  (Henry Rivera
Dep., ECF No. 38-3 at 52 (stating that he worked at least 10 hours a day, and sometimes
worked 14 or 15 hours a day); Reinaldo Rodriguez Dep., ECF No. 38-10 at 71 (stating
that he sometimes worked more than 14 or 15 hours a day)).  Therefore, this Court
declines to accept MXD's lump sum approach, and summary judgment will not be
granted as to these three plaintiffs' claims.

>    5.   *Applicability of the NJHWL*

MXD argues that Plaintiffs Echavarria, Vargas, and Jose Cruz worked in New
York, and therefore the NJWHL does not apply to them.  The NJWHL protects workers
that are employed in New Jersey.  *Mulford v. Computer Leasing, Inc.*, 759 A.2d 887, 891
(N.J. Super. Ct. Law Div. 1999).  While MXD is correct that New Jersey law does not
apply beyond its borders, there is significant evidence in the record that these three
plaintiffs were employed in New Jersey, and are therefore covered by the NJWHL.
(Camillo Echavarria Dep., ECF No. 38-11 at 115 (describing his work day as always
starting at one of two warehouses in New Jersey); (Carlos Vargas Dep., ECF No. 38-2 at
59-60 (describing multi-day delivery trips that he always began by loading up his truck in
New Jersey)).  *See also Littman v. Firestone Tire & Rubber Co.*, 709 F. Supp. 461, 469
(S.D.N.Y. 1989) (holding that New Jersey law applied to an employee who was based out
of a New Jersey office, and who was terminated in New Jersey, despite employee living
and performing some of his work in New York).  Since there is significant evidence in
the record that suggests these plaintiffs were employed in New Jersey, MXD may not
prevail on this point on summary judgment.

Because none of MXD's arguments in favor of summary judgment have been successful, MXD's motion for summary judgment will be denied.

### D.  Plaintiffs' Motion for Class Certification

Plaintiffs have moved to certify a class of "all individuals who reported to the Williams-Sonoma facility in Monroe, New Jersey and performed truck driving and/or helper functions pursuant to delivery manifests and/or routes that were created by MXD and/or Williams-Sonoma, from August 2010 to the present."  (Pls.' Mot. for Class Certification, ECF No. 19-1 at 2-3).  This class may only be certified if the Court finds that each prerequisite of Rule 23(a) has been met.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 310.  The prerequisites of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Additionally, Rule 23 requires plaintiffs to meet the requirements of either Rule 23(b)(1), (2) or (3*). Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).  Plaintiffs assert that their class meets the requirements of Rule 23(b)(3).  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Plaintiffs carry the burden of showing that all the requirements of Rule 23 have been met.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 316 n.14.  The Court will

apply a "preponderance of the evidence" standard to determine if Plaintiffs have met their burden. *Id.* at 320. The Third Circuit encourages district courts to thoroughly examine plaintiffs' factual and legal allegations, and to perform a "preliminary inquiry into the merits" as needed to determine whether the plaintiffs' claims may be properly resolved as a class action. *See id.* at 317-18 (citations omitted).

On the first Rule 23(a) prerequisite, numerosity, Plaintiffs attest that they have identified 166 individuals who fit into their class description. (Pls.' Mot. for Class Certification, ECF No. 19-1 at 21-22). While there is no precise number of prospective plaintiffs that is necessary to meet the numerosity prerequisite, the Third Circuit has previously indicated that this perquisite is met if there are more than 40 potential plaintiffs. *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001). Since Plaintiffs have provided a list of well over 40 potential plaintiffs, and Defendants do not make any arguments as to why this list is insufficient to fulfill the numerosity perquisite, the Court finds that the first Rule 23(a) prerequisite is fulfilled.

Plaintiffs fail to meet the next Rule 23(a) prerequisite, commonality. Commonality requires that class members share at least one common question of law or fact. *Marcus*, 687 F.3d at 597 (citation omitted). Commonality also requires that "there are classwide answers." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015). If the class members are too different from one another to generate common answers that will drive the litigation to a resolution, then the commonality prerequisite is not satisfied. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The focus is not on whether each class member has a colorable claim, but on whether the defendant's

conduct was common as to all class members.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 299 (3d Cir. 2011).

MXD's conduct was not common as to all proposed class members.  Plaintiffs attempt to combine two fundamentally different sets of plaintiffs: the Driver/Helper Plaintiffs, and the owners of small transportation companies like Jose Cruz.  MXD classified the transportation company owners as independent contractors by having the owners sign Independent Truckman's Agreements.  (*See* Jose Cruz Dep., ECF No. 38-6 at 181).  MXD took no such direct action with the Driver/Helper Plaintiffs, whom they neither hired nor paid.

Because the transportation company owners had contracts with MXD, at trial the owners would only have to argue that they were misclassified under the ABC test.  The Driver/Helper Plaintiffs would have to first argue that MXD employed them, and only if they succeeded in showing that MXD employed them, could they then argue that they were misclassified under the ABC test.  This puts the Driver/Helper Plaintiffs in a much more difficult position than the owners of the transportation companies.  Their additional legal burden makes a "classwide answer" on the ultimate misclassification issue unlikely.

The two groups also have different positions under the ABC test itself.  The ABC test presumes that an employer's worker is an employee under the NJWHL unless an employer can show:

> (A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and
> (B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
> (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

N.J. Stat. Ann. § 43:21–19(i)(6)).  On the A prong, MXD exerted more control over the

transportation company owners than they did over the Driver/Helper Plaintiffs.  MXD

had control over the transportation company owners through their contracts, and MXD

directly informed the owners what their responsibilities were.  (Jose Cruz Dep., ECF No.

38-6 at 137-142).  The Driver/Helper Plaintiffs had no contracts with MXD; they were

hired by the transportation companies, whose owners told them what to do.  (Camillo

Echavarria Dep., ECF No. 38-11 at 166, 172).  These differences again create a more

difficult path for the Driver/Helper Plaintiffs.  Conversely, on the C prong, the

Driver/Helper Plaintiffs have a stronger position than the transportation companies.  The

transportation companies had their own trucks and equipment, while the Driver/Helper

Plaintiffs did not.  (Jose Cruz Dep., ECF No. 38-6 at 144-45).  The transportation

companies hired and paid additional employees, while the Driver/Helper Plaintiffs did

not.  (Jose Cruz Dep. 38-6 at 89-90).  These differences make the transportation

companies look more like they were "customarily engaged in an independently

established" business than the Driver/Helper Plaintiffs.  *See Carpet Remnant Warehouse,*

*Inc. v. New Jersey Dep't of Labor*, 593 A.2d 1177, 1190 (N.J. 1991) (describing a

worker's additional employees, vehicles, and equipment as relevant to evaluating the C

prong of the ABC test).  Therefore, it is unlikely that the ABC test would provide the

same answers to the two groups of plaintiffs.  Given all of the above discrepancies

between the two groups, Plaintiffs are unable to establish commonality.

Plaintiffs point to *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588 (N.D. Cal.

2014) to argue that their class is permissible.  *Villalpando* was another suit against MXD

(under its former name "Exel Direct") where plaintiffs alleged that MXD had

24

misclassified them as independent contractors.  The *Villalpando* court certified a class

with the following description:

> All individuals who have personally provided delivery services for
> Defendant Exel Direct in California while being classified by Exel Direct
> as independent contractors, at any time beginning June 14, 2008 until
> resolution of this action. Any individual who has signed the Independent
> Truckman's Agreement with Exel Direct but has provided delivery services
> exclusively through the use of hired second drivers and who has never
> personally made deliveries for Exel is excluded from the Class.

*Villalpando*, 303 F.R.D. at 610.  Plaintiffs argue that this class includes the Driver/Helper

Plaintiffs and the transportation companies.  Plaintiffs are mistaken.  In its opinion, the

*Villalpando* court refers only to the transportation company owners as "Exel drivers."

This is apparent when the *Villalpando* court describes the Exel drivers as interviewing

directly with Exel, signing Independent Truckman's Agreements, and hiring what the

court refers to as "second drivers."  *Id.* at 593, 597.  The "second drivers" are equivalent

to the Driver/Helper Plaintiffs.  The second drivers do not have contracts with Exel,

though Exel must approve them.  *Id.* at 597.  These "second drivers" are not part of the

*Villalpando* class.  The class description obscures this slightly, but other passages make

their absence clear.  For example, when the *Villalpando* court discusses typicality, it

states: "the alleged injury results from a uniform course of conduct that affects all drivers,

namely, the requirement that all drivers must sign the same ITA [Independent

Truckman's Agreement] classifying them as independent contractors."  *Id.* at 607.  When

the court refers to "all drivers," it clearly excludes any drivers who do not have a contract

with Exel.  The *Villalpando* court was only concerned with drivers who had signed

contracts with Exel, and therefore the class certification refers to all individuals who

performed deliveries for Exel "while being classified by Exel Direct as independent contractors" through their Independent Truckman's Agreements. *Id.* at 610.

A comparable class cannot be created here. Jose Cruz is the only plaintiff who is a transportation company owner, and has not been offered as a name plaintiff. Plaintiffs suggested at oral argument that a class of only Driver/Helper Plaintiffs would be possible, but that potential class was not briefed. Moreover, this potential class would fail to meet Rule 23(b)(3)'s predominance requirement. Predominance is a far more demanding requirement than commonality. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311. District courts must "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Id.* (citation omitted). Common issues must predominate in order for Rule 23(b)(3) to be satisfied. *Id.* These issues must be capable of being resolved through common evidence, not individualized evidence. *Id.*; *Sullivan*, 667 F.3d at 305.

The Driver/Helper Plaintiffs cannot prove their case without individualized evidence. At trial, the Driver/Helper Plaintiffs will first have to show that MXD employed them, most likely under the *Enterprise* joint employer theory, and then show that they were employees under the ABC test. Both tests turn on the specific relationship between the worker and the purported employer, and control is a key element. The amount of control MXD exercised over the different Driver/Helper Plaintiffs varied significantly. The variety appears to have been partly driven by the fact that the Driver/Helper Plaintiffs were employed by different transportation companies, with larger companies relying more heavily on MXD to control their workers. Plaintiff Angulo worked for transportation company owner Jose Pena, who told him each morning

which loading dock door to park at at the warehouse.  (Plinio Angulo Dep., ECF No. 38-9 at 59-60).  Plaintiff Andres Cruz worked for FGO, a larger transportation company, and in his case MXD told him where to park in the morning.  (Andres Cruz Dep., ECF No. 38-1 at 48-49).  Plaintiff Vargas also worked FGO, and even though he was a Helper, he had to attend MXD's morning meetings.  (Carlos Vargas Dep., ECF No. 38-2 at 53).  Plaintiff Gomez worked for a smaller transportation company run by a man named Tariq, and Plaintiff Gomez believed that only drivers needed to attend MXD's meetings.  (Maycol Gomez Dep., ECF No. 38-8 at 90).  Some plaintiffs checked in with MXD from the road frequently, while others only checked in when there was a problem.  (*Cf.* Andres Cruz Dep., ECF No. 38-1 at 72 (called MXD every three stops); Plinio Angulo Dep., ECF No. 38-9 at 56 (only called in when he encountered a problem)).  Moreover, since the Driver/Helper Plaintiffs did not sign agreements with MXD, there is no common codified set of MXD policies that the Driver/Helper Plaintiffs could rely upon at trial.  *Cf. Villalpando*, 303 F.R.D. at 597 (summarizing the plaintiffs' argument that class certification was appropriate because the court could evaluate the MXD's standardized contracts and company-wide policies that applied to all the plaintiffs).

There is additionally some variety in the Driver/Helper Plaintiffs' testimony as to the C prong of the ABC test, namely whether the plaintiff was engaged in an independent business.  *See Carpet Remnant Warehouse*, 593 A.2d at 1187 (noting that the C prong is satisfied if defendant shows that plaintiff has an independent occupation that will clearly continue after plaintiff's relationship with defendant is over).  Some plaintiffs, like Plaintiff Gomez, worked as truck drivers before and after their time with MXD, suggesting that they had their own independent occupations as truck drivers.  (Maycol

Gomez Dep., ECF No. 38-8 at 12-13, 30).  Other plaintiffs, like Plaintiff Angulo, worked in different types of jobs before and after their work for MXD, suggesting no such independent occupation existed.  (Plinio Angulo Dep., ECF No. 38-9 at 9-10 (describing his prior work as a fast food manager, then as a truck driver for MXD, then as a construction worker)).  These differences would make it extremely difficult to try the Driver/Helper Plaintiffs' case without the use of individualized evidence.

Since Plaintiffs' proposed class does not satisfy the commonality prerequisite of Rule 23(a), and a smaller class of Driver/Helper Plaintiffs would not satisfy Rule 23(b)(3)'s predominance requirement, Plaintiffs' Motion for Class Certification will be denied.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment will be denied, WSI's Motion for Summary Judgment will be granted, MXD's Motion for Summary Judgment will be denied, and Plaintiffs' Motion for Class Certification will be denied.  An appropriate order will follow.


*  /s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.


Dated: March 16, 2016

28