NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CAMILLO ECHAVARRIA, JONATHAN MARK ADELS, JAMES LABRIE, MAYCOL GOMEZ, PLINIO ANGULO, JOSE CRUZ, HENRY RIVERA, JOSE SANTOS, REINALDO RODRIGUEZ, ANDRES CRUZ and CARLOS VARGAS, on behalf of themselves and all other similarly situated persons, | Civ. No. 15-6441 |
| | OPINION |
| Plaintiffs, | |
| v. | |
| WILLIAMS SONOMA, INC., J&J TRUCKING, INC., MXD, INC. (f/k/a EXEL DIRECT, INC.), ABC CORP. and JANE & JOHN DOES, | |
| Defendants. | |

THOMPSON, U.S.D.J.

**INTRODUCTION**

This matter has come before the Court on a motion to certify the Court's orders for

immediate appeal filed by Plaintiffs Camillo Echavarria, Jonathan Mark Adels, James Labrie,

Maycol Gomez, Plinio Angulo, Jose Cruz, Henry Rivera, Jose Santos, Reinaldo Rodriguez,

Andres Cruz, and Carlos Vargas ("Plaintiffs").  (ECF No. 64).  Defendants Williams-Sonoma,

Inc. ("WSI") and MXD Group, Inc. ("MXD") oppose the motion.  (ECF Nos. 65).  Upon

consideration of the parties' written submissions and without oral argument pursuant to Local

Civil Rule 78.1(b), the Court will deny Plaintiffs' motion.

**BACKGROUND**

Since the parties are familiar with the facts of this case, the Court will only briefly recite the facts relevant to this motion.  WSI sells a variety of home goods, including furniture.  WSI stores some of its furniture in a warehouse in Monroe, New Jersey.  WSI engaged MXD for final mile furniture deliveries, and MXD had a small dispatch office in WSI's Monroe warehouse that coordinated furniture deliveries.  MXD did not have its own delivery trucks, but instead hired various transportation companies to actually deliver WSI's furniture to its customers.  These transportation companies in turn hired drivers and "helpers" to drive the transportation companies' trucks and assist in delivering the furniture.

Plaintiffs previously worked at WSI's warehouse.  Ten of the plaintiffs worked as drivers or helpers.  This opinion will refer to them as the "Driver/Helper Plaintiffs."  They typically arrived at the warehouse early in the morning, loaded furniture onto their assigned trucks, and then left to make their deliveries.  The Driver/Helper Plaintiffs were hired and paid by the various transportation companies.  One of the plaintiffs, Jose Cruz, ran a small transportation company.  Unlike the Driver/Helper Plaintiffs, he owned his own trucks, he hired a driver and helpers to work with him, and he had a contract with MXD.  (Jose Cruz Dep. 38-6 at 89-90, 144, 180).  None of the plaintiffs were hired or paid by WSI.

All plaintiffs allege that they were misclassified as independent contractors, when they should have been classified as employees, and paid overtime in accordance with the New Jersey State Wage and Hour Law ("NJWHL").  (*See* Pls.' Third Am. Compl., ECF No. 1 at 6-7).  Plaintiffs allege that even though the Driver/Helper Plaintiffs were hired and paid by the transportation companies, MXD and WSI are nevertheless employers liable under the NJWHL because they controlled the manner and means of Plaintiffs' employment.  (*Id.* at 5).

2

Plaintiffs filed a complaint alleging violations of the NJWHL in the Superior Court of New Jersey in September 2012. (ECF No. 1). The case was removed to this Court in November 2014, remanded due to an insufficiently large amount in controversy, then removed again in August 2015 once the amount in controversy was sufficiently increased. (*Id.* at 5-7). Plaintiffs, WSI, and MXD moved for summary judgment on November 20, 2015, after almost all discovery was completed. (ECF Nos. 20-22). Plaintiffs also moved for class certification. (ECF No. 19). After an oral hearing and considering the written submissions of the parties, this Court granted WSI's motion for summary judgment, denied MXD's motion for summary judgment, denied Plaintiffs' motion for summary judgment, and denied Plaintiffs' motion for class certification. (ECF No. 54). Plaintiffs subsequently moved for reconsideration. (ECF No. 55). The Court denied Plaintiffs' motion. (ECF No. 62).

Plaintiffs then made a motion containing three requests related to appellate review. (ECF No. 64). First, Plaintiffs requested that the Court to certify its two previous opinions for immediate appeal pursuant to 28 U.S.C. § 1292(b). (*Id.*). In the alternative, Plaintiffs requested that the Court certify the entry of summary judgment in WSI's favor as a final judgment under Federal Rule of Civil Procedure 54(b). (*Id.*). Lastly, Plaintiffs requested that the current proceedings be stayed pending the outcome of Plantiffs' applications to the Third Circuit. (*Id.*). This motion is currently before the Court.

## LEGAL STANDARD

District courts may certify their orders for immediate appeal under 28 U.S.C. 1292(b). There are three requirements under the statute. The order to be certified must "(1) involve a controlling question of law; (2) offer substantial ground for difference of opinion; and (3) have the potential to materially advance the ultimate termination of the litigation, if appealed immediately." *Royal Ins. Co. of Am. v. K.S.I. Trading Corp.*, No. 04-867, 2006 WL 1722358, at

*3 (D.N.J. June 19, 2006) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753 (3d Cir. 1974)).  If these three criteria are met, the court may still refuse to certify the order, as the decision whether to certify an order is "entirely within the district court's discretion." *Id.*

Federal Rule of Civil Procedure 54(b) provides that when an action involves multiple claims for relief, or multiple defendants, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if" the Court finds "no just reason for delay." Fed. R. Civ. P. 54(b).  Rule 54(b) is "the exception, not the rule, to the usual course of proceedings in a district court." *Elliott v. Archdiocese of New York*, 682 F.3d 213, 220 (3d Cir. 2012).  A motion under Rule 54(b) should only be granted "in the infrequent harsh case as an instrument for the improved administration of justice and the more satisfactory disposition of litigation in the light of the public policy indicated by statute and rule." *Panichella v. Pennsylvania R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958) (citation and internal quotation marks omitted).

## ANALYSIS

### I.      Certification Under 28 U.S.C. § 1292(b)

"Ordinarily the proceedings in a district court must be final as to [] all causes of action and parties for a court of appeals to have jurisdiction over an appeal under 28 U.S.C. § 1291." *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 460 F.3d 470, 476 (3d Cir. 2006).  An "order which terminates fewer than all claims, or claims against fewer than all parties," by contrast, fails to "constitute a 'final' order for purposes of appeal under 28 U.S.C. § 1291." *Id.* (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 343 (3d Cir. 1999)).  However, Plaintiffs ask the Court to certify its opinion resolving the summary judgment motions, as well as its opinion denying Plaintiffs' motion for reconsideration, so that Plaintiffs may immediately seek appellate review. (ECF No. 64).  The issue Plaintiffs focus on for appellate review is the same issue that Plaintiffs

have been focused on throughout this litigation, namely, the application of the "ABC" test in employment disputes.  (Pls.' Br. at 9-14, ECF No. 64-1).

The ABC test is the test used under the NJWHL to determine if a worker should be classified as an employee or as an independent contractor.  *Hargrove v. Sleepy's, LLC*, 106 A.3d 449, 465 (N.J. 2015).  Plaintiffs have argued that the ABC test is the only test a court should consider when a plaintiff pursues a misclassification claim, regardless of how many defendants a plaintiff chooses to sue, or what exactly the relationship was between the defendants and the plaintiff.  (*See* Pls.' Br. at 10, ECF No. 64-1 (asserting "*Hargrove* does not establish any threshold test that workers must pass to 'determine who employed' them before they may invoke the 'ABC' test.")).  This Court previously noted that in misclassification suits with multiple alleged employers, the Court must utilize a threshold test to determine who employed the plaintiffs before applying the ABC test.  (Op. at 7, ECF No. 53).  It is illogical to hold a defendant liable for an employee's misclassification under the ABC test if a defendant only had a tangential relationship to a plaintiff.  Contrary to Plaintiffs' assertion, the Court *did not* establish a "direct relationship" test or require a signed agreement between Plaintiffs and the defendants. (Pls.' Br. at 9-10, ECF No. 64-1).  Rather, the Court simply analyzed whether WSI and MXD could be liable as employers or joint employers based on the tests that have previously been used in this district in similar cases with multiple alleged employers.  (Op. at 7-9, 11-13, ECF No. 53).

Plaintiffs argue that there is a "substantial ground for difference of opinion" on whether any threshold test should be applied before applying the ABC test.  (Pls.' Br. at 11-12, ECF No. 64-1).  A "substantial ground for difference of opinion" is one of the three required elements for an order to be eligible for certification under Section 1292(b).  28 U.S.C. § 1292(b).  This element is satisfied when there is "a genuine doubt or conflicting precedent as to the correct legal standard."  *Royal Ins. Co. of Am.*, 2006 WL 1722358, at *3.  Plaintiffs have the burden to

5

demonstrate that "other courts have substantially differed in applying" the legal standard the Court applied.  *Harter v. GAF Corp.*, 150 F.R.D. 502, 518 (D.N.J. 1993).

Plaintiffs are unable to carry their burden.  In both their initial and reply briefs, Plaintiffs cite a single Massachusetts state court case for the proposition that "other jurisdictions that apply an 'ABC' test have chosen <u>not</u> to impose a threshold requirement before applying the 'ABC' test.  *See, e.g.*, *Depianti v. Jan-Pro Franchising Intern., Inc.*, 465 Mass. 607, 622 (2013)."  (Pls.' Reply Br. at 6, ECF No. 67).  However, Plaintiffs misstate the holding of this single case. *Depianti* does not hold that there is no threshold test.  Rather, the *Depianti* Court merely held that "the absence of a contract between the parties does not alone preclude liability under G.L. c. 149, § 148B."[1]  *Depianti v. Jan-Pro Franchising Int'l, Inc.*, 990 N.E.2d 1054, 1068 n.17 (Mass. 2013).  The *Depianti* Court explained that while a party like MXD, who only contracted with the transportation companies, "ordinarily . . . would not be liable for misclassification of [] third-party workers" such as the Driver/Helper Plaintiffs, a party like MXD *could* be liable if they were an "agent of misclassification."  *Id.*  This language plainly contemplates a threshold analysis to determine if a defendant was an "agent of misclassification" or not.

Since Plaintiffs fail to offer a single case that suggests no threshold test is appropriate in misclassification suits with multiple alleged employers, there is no "substantial ground for difference of opinion" on the issue.  28 U.S.C. § 1292(b); *Royal Ins. Co. of Am.*, 2006 WL 1722358, at *3.  Therefore, Plaintiffs are unable to meet all the prerequisites for certification, and Plaintiffs' request for certification under Section 1292(b) must be denied.

---

[1] This is Massachusetts' statute that distinguishes independent contractors from employees.

## II.      Certification Under Rule 54(b)

Plaintiffs alternatively request that the Court enter final judgment as to WSI.  (Pls.' Br. at 17, ECF No. 64-1).  This Court previously dismissed all claims against WSI.  (ECF No. 54). Courts may enter final judgment as to a particular claim or defendant when: "(1) there has been a final judgment on the merits, i.e., an ultimate disposition on a cognizable claim for relief; and (2) there is 'no just reason for delay.'"  *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 202 (3d Cir. 2006) (citation omitted).  To determine if there is "just reason for delay," the Court must consider the following factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 203 (citation omitted).

Plaintiffs argue that certifying WSI's judgment for immediate appeal is appropriate because doing so "will better enable Plaintiffs to evaluate their claims and litigation strategy before investing resources in pursuing the claims against the remaining defendant."  (Pls.' Br. at 17-18, ECF No. 64-1).  This is an impermissible base for certification under Rule 54(b).  *See Elliott v. Archdiocese of New York*, 682 F.3d 213, 220-21 (3d Cir. 2012) ("[Rule] 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel.") (citation omitted).  The Third Circuit encourages district courts to be "conservative" in utilizing Rule 54(b), particularly when there is a risk of piecemeal appeals.  *See Gerardi v. Pelullo*, 16 F.3d 1363, 1372 (3d Cir. 1994).  Considering the above *Berckeley* factors, the fact that Plaintiffs raise the same issues in their claims against WSI and MXD, Plaintiffs' present petition for leave to file

7

an interlocutory appeal before the Third Circuit, and the likelihood of future appeals, this Court finds that Plaintiffs' motion for certification under Rule 54(b) must be denied.

### III.   Plaintiffs' Request for a Stay

Plaintiffs request that this Court stay its proceedings pending the outcome of Plaintiffs' appeals.  (Pls.' Br. at 18, ECF No. 64-1).  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Commonwealth Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3d Cir. 1988) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)).  "In considering whether a stay is appropriate, the Court examines whether the proposed stay would prejudice the non-moving party, whether the proponent of the stay would suffer a hardship or inequity if forced to proceed and whether granting the stay would further the interest of judicial economy." *Konopca v. Comcast Corp.*, No. 15-6044, 2016 WL 1645157, at *3 (D.N.J. Apr. 26, 2016) (citing *Landis*, 299 U.S. at 254-55; *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 542 (D.N.J. 2008)).  The party seeking the stay has the burden to show that a stay would be appropriate.  *Id.*

If the Court stayed these proceedings, the defendants would be slightly prejudiced by the delay.  Plaintiffs failed to highlight any hardship or inequity they would face if the stay were denied, and it does not appear there would be any hardship or inequity, as discovery is largely completed already.  Lastly, granting a stay would not further the interest of judicial economy, as Plaintiffs' two other requests will be denied, and this case can move forward.

The above factors weigh against staying the proceedings at this point.  Therefore, the Court will not grant Plaintiffs' request for a stay.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion will be denied.  An appropriate order will follow.

                                    */s/ Anne E. Thompson*
                                    ANNE E. THOMPSON, U.S.D.J.

Date: June 30, 2016